NO.
12-06-00135-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

DANNY LANE DILLON,    §          APPEAL FROM THE 145TH

APPELLANT

 

V.        §          JUDICIAL DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §          NACOGDOCHES
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM
OPINION

            Danny
Lane Dillon appeals from his convictions for aggravated sexual assault of a
child and indecency with a child.  In
eight issues, he argues that he received ineffective assistance of counsel and
that the trial court erred in admitting statements made by the complaining
witness.  We affirm. 

 

Background

            Because Appellant does not contest
the sufficiency of the evidence, we will briefly state the facts that support
the conviction.  At one time Appellant
was married to the complaining witness’s grandmother.  At the time of trial, the complaining witness
was a twenty-one year old enlisted member of the U.S. Army.  She testified that Appellant sexually
assaulted her when she was seven years old. 
She did not report this to law enforcement until 2000, when she was
fifteen.  The trial court admitted, over
Appellant’s objection, the testimony of several witnesses in whom the
complaining witness confided before making a report to law enforcement.  Appellant gave a statement to the
police.  He denied that he had sexual
intercourse with the complaining witness. 
He did tell the police that on several occasions she “groped” him, that
he became “excited” on several of those occasions, and that he might have
touched the child’s vagina on one occasion. 








            Appellant was found guilty by a
jury.  A separate punishment hearing was
held.  Appellant testified at the
punishment hearing but did not present any other evidence.  The jury assessed punishment at sixty years
of imprisonment.  Following the trial,
Appellant filed a motion for a new trial. 
A hearing was held on that motion. 
Among the claims advanced at the hearing was the claim that Appellant’s
counsel failed to provide effective assistance of counsel because he did not
locate or interview character witnesses. 
The motion for new trial was overruled by operation of law.  This appeal followed.

 

Ineffective Assistance of Counsel

            In his first and second issues,
Appellant argues that the trial court should have granted his motion for new
trial.  Specifically, he argues that his
counsel rendered ineffective assistance because counsel’s pretrial
investigation did not include seeking out or developing character witnesses for
use in the punishment phase of trial.

Applicable
Law

            Claims of ineffective assistance of
counsel are evaluated under the two step analysis articulated in Strickland
v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674
(1984).  The first step requires an
appellant to demonstrate that trial counsel’s representation fell below an
objective standard of reasonableness under prevailing professional norms.  See Strickland, 466 U.S.
at 688, 104 S. Ct. at 2065; McFarland v. State, 928 S.W.2d 482,
500 (Tex. Crim. App. 1996).  An
ineffective assistance of counsel claim is not reviewed for isolated or
incidental deviations from professional norms, but on the basis of the totality
of the representation.  See Strickland,
466 U.S. at 695, 104 S. Ct. at 2069.

            The second step requires the
appellant to show prejudice from the deficient performance of his
attorney.  See Hernandez v.
State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).  To establish prejudice, an appellant must
show that there is a reasonable probability that the result of the proceeding
would have been different but for counsel’s deficient performance.  See Strickland, 466 U.S.
at 694, 104 S. Ct. at 2068.  

            We begin with the strong presumption
that counsel’s conduct falls within the wide range of reasonable professional
assistance.  See Jackson v.
State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  As part of this presumption, we presume
counsel’s actions and decisions were reasonable and were motivated by sound
trial strategy.  See id.  Appellant has the burden of proving
ineffective assistance of counsel.  See
id.

            Generally, we review a trial court’s
denial of a motion for new trial under an abuse of discretion standard.  See Holden v. State, 201 S.W.3d
761, 763 (Tex. Crim. App. 2006) (citing Lewis v. State, 911
S.W.2d 1, 7 (Tex. Crim. App. 1995)).  In
the context of ineffective assistance of counsel, we review the ultimate
question of prejudice de novo, but the trial court’s decision is afforded
deference on any underlying factual determinations.  Johnson v. State, 169 S.W.3d
223, 239 (Tex. Crim. App. 2005).  When no
express factual findings are made by the trial court, we may “impute implicit
factual findings that support the trial judge’s ultimate ruling on that motion
when such implicit factual findings are both reasonable and supported in the
record.”  Charles v. State,
146 S.W.3d 204, 213 (Tex. Crim. App. 2004).

Facts

            Appellant’s counsel’s investigation
of this case did not include the development, cultivation, or gathering of
character witnesses to offer mitigating evidence in the event that Appellant
was convicted.  This was not because
counsel believed it was certain that Appellant would be acquitted.  Rather, in light of a statement Appellant had
given to the police, counsel believed that a conviction was more likely than
not.  Counsel, who is board certified in
criminal law and testified he had handled a number of cases involving these
issues, believed that character witnesses were unhelpful in cases of sexual
assault of a young child.  He testified
at the motion for new trial hearing that he had used or considered using such
witnesses in capital cases and that he thought they might be useful in cases
such as a theft case.  But he also said
that “[i]n an aggravated sexual assault on a seven year old, I just don’t think
they’re helpful.”  Counsel was concerned
that character witnesses would be asked how a convicted child rapist should be
punished, and that the answer would not be helpful. Furthermore, the pretrial
discovery revealed that another child had accused Appellant of sexually
assaulting her.  It appears that accuser
was not available to testify, but counsel was concerned that character
witnesses might be asked about that accusation. 
Counsel testified that he discussed his view of character witnesses with
Appellant and that he discussed witnesses with Appellant in a general sense.[1]


            At the motion for new trial hearing,
Appellant presented affidavits from fourteen witnesses.  One was his wife, who met him after charges
had been filed, and at the time of trial had been married to him for less than
a year.  She also testified at the hearing.  Other affidavits admitted at the hearing were
from Appellant’s two stepchildren, one living in Alaska, his mother, his
sister, his nephew, his daughter, his brother, his sister in law, two of his
wife’s friends, two coworkers, and his son.

Analysis

            In Strickland, as in
this case, the trial lawyer did not investigate character witnesses, and the
convicted defendant came forward with fourteen character witnesses in
postconviction proceedings.  Strickland,
466 U.S. at 675, 104 S. Ct. at 2058.  The
Court upheld the conviction, holding that trial counsel’s performance was not
deficient and that “the decision not to seek more character or psychological
evidence than was already in hand was . . . reasonable.”  Id., 466 U.S. at 699, 104
S.  Ct. at 2070–71.

            The Court further held that “strategic
choices made after less than complete investigation are reasonable precisely to
the extent that reasonable professional judgments support the limitations on
investigation.”  Id., 466
U.S. at 690–91, 104 S. Ct. at 2066.  In
other words, trial counsel has a duty to make reasonable investigations or to
make a reasonable decision that a particular investigation is unnecessary.  A particular decision not to investigate must
be “directly assessed for reasonableness in all the circumstances, applying a
heavy measure of deference to counsel’s judgments.”  Id., 466 U.S. at 692, 104 S.
Ct. at 2066.

            In Wiggins v. Smith,
539 U.S. 510, 524–25, 123 S. Ct. 2527, 2536–37, 156 L. Ed. 2d 471 (2003), the
Court applied Strickland, but held that the representation was
deficient.  The Court concluded that
counsel’s investigation was below professional standards, and further that the
investigation performed should have alerted him that further investigation was
warranted.  Id., 539 U.S.
at 525, 123 S. Ct. at 2537.  In
proceedings after trial, Wiggins showed that his attorney failed to discover
the facts surrounding his upbringing, facts that the Supreme Court considered
to be powerful mitigating evidence.  Id.,
539 U.S. at 534, 123 S. Ct. at 2542.  

            These cases represent two bounds of
the law regarding pretrial investigation of mitigation evidence.  On one hand, a lawyer does not automatically
render ineffective assistance of counsel if he does not investigate character
witnesses, and counsel’s decision is to be assessed with a heavy measure of
deference.  Strickland, 466
U.S. at 691, 104 S. Ct. at 2066.  On the
other hand, a lawyer is ineffective if his investigation is below professional
standards or he does not follow up on reasonably promising leads.   Id., 539 U.S. at 525, 123 S.
Ct. at 2537.  

            In this case, trial counsel did not
think character witnesses could be effective in a child sexual assault case
where the victim was seven years old at the time of the offense.[2]  Nothing Appellant developed after trial
suggests that trial counsel was incorrect in this assessment, and we can say
with reasonable certainty that this trial counsel would not have called any of
these witnesses had he done the investigation undertaken by appellate counsel.[3]  More importantly, counsel did not ignore any
promising leads.  He discussed his
strategy with Appellant, and he discussed witnesses, if not specifically
character witnesses, with Appellant. 
Appellant has not shown any enticing avenues for investigation that were
ignored.  It is true that there would
have been no harm in seeking out character witnesses prior to trial.  But we do not think that Appellant’s right to
counsel was abrogated because his attorney did not think character witnesses
would be helpful and did not see anything in his pretrial investigation that
caused him to think that there was promising mitigating evidence to be
found.  See Rompilla v. Beard,
545 U.S. 374, 389, 125 S. Ct. 2456, 2467, 162 L. Ed. 2d 360 (2005) (“Questioning
a few more family members and searching for old records can promise less than
looking for a needle in a haystack, when a lawyer truly has reason to doubt
there is any needle there.”). 

            Exploring mitigation evidence is an
important part of the defense in many criminal cases.  There are cases, Rompilla and Wiggins
for example, where counsel’s failure to follow up on  promising leads during pretrial investigation
is so outside of professional norms that the accused is entitled to a new trial
despite the state’s having done nothing to impinge on the accused’s
rights.  But neither is the failure, or
the declining, to investigate character witnesses always below professional
norms.  Appellant’s attorney decided to
humanize his client, and present his personality and his story by calling him
as a witness.  He decided not to call
character witnesses, and he made that decision early in the process, to the
extent that he did not investigate character witnesses.  Such a strategy is risky, and will result in
the representation being found to be unprofessional when there are promising
leads that should have been followed. 
Appellant has identified no such leads here.  Appellant would be entitled to relief if the
rule were that an attorney who fails to conduct pretrial investigation of
character witnesses is ineffective in every case, every time.  However, that is not the rule.

            Appellant has directed us to two
intermediate courts of appeals decisions considering similar issues.  In Milburn v. State, 15 S.W.3d
267 (Tex. App.–Houston [14th Dist.] 2000, pet. ref’d), the defendant was
convicted of possession of more than 400 grams of cocaine.  Counsel did not investigate character
witnesses.  Id. at
269.  At the hearing on the motion for
new trial, the parties stipulated to the testimony of twenty friends or
relatives who could have offered favorable character evidence.  Id.  Counsel testified that he did not explore
this evidence because, in his experience, juries did not place much weight on
the testimony of family members.  Id.
at 270.  Characterizing this as a “decision
to forego presentation of mitigating evidence,” the court found counsel’s
representation to be inadequate because such a decision could be made
reasonably only “after evaluating the available testimony and determining that
it would not be helpful.”  Id.  In Shanklin v. State, 190
S.W.3d 154 (Tex. App.–Houston [1st Dist.] 2005), pet. dism’d,
improvidently granted, 211 S.W.3d 315 (Tex. Crim. App. 2007),[4]
the defendant killed another person in a bar fight.  Counsel did not interview character witnesses
and did not present any character evidence at the sentencing hearing.  Id. at 164.  Counsel gave no reason for this course of
action and said that his failure to investigate and his decision not to call
the witnesses did not result from “any reasoned trial strategy.”  Id.

            The Shanklin decision
is easily distinguished from this case because counsel in Shanklin offered
no reason for his failure to conduct an investigation.  Furthermore, the court held that “defense
counsel’s failure to investigate and call any punishment witnesses amounts to
deficient performance,” without considering the reasons the investigation was
curtailed.  Id. at
165.  The decision to call witnesses is
related to the decision not to investigate, but Strickland and Wiggins
stand for the proposition that a failure to investigate the mitigation case is
not per se an abdication by counsel. 
Rather, as the court of criminal appeals did in Ex parte Briggs,
187 S.W.3d 458, 467 (Tex. Crim. App. 2005), the reviewing court must assess the
reasons for counsel’s actions.  In both Briggs
and Shanklin there was no strategic reason for curtailing the
investigation, and so the performance prong of the Strickland
test was met. 

            We distinguish this case from Milburn
for a related reason.  Citing its
previous decision in the same case, the court held that counsel’s failure to
investigate character witnesses fell below the professional norms.  Milburn, 15 S.W.3d at 269–70.  In its previous decision, the court had
determined that counsel’s lack of investigation was not entitled to deference
as a strategic choice because counsel said he thought the witnesses, if called,
would hurt his case, and so he did not investigate them.  See Milburn v. State, 973
S.W.2d 337, 344 (Tex. App.–Houston 1998), rev’d, 3 S.W.3d 918 (Tex.
Crim. App. 1999).  The court did not
explicitly consider whether the limitation on the investigation was reasonable,
but determined that the decision not to call a witness was entitled to
deference only if he conducted an investigation.  Id. (“This decision is a prime
example of a strategic choice made after a less than adequate investigation
which, therefore, is not supported by informed professional judgment.”).

            As we stated, the reasons for the
limitation on the investigation must be assessed.[5]  In this case, an experienced attorney decided
not to investigate character witnesses because he did not think they would be
helpful and because his pretrial investigation did not cause, nor should it
have caused, him to believe that further investigation of character witnesses
would be helpful.  This was a reasoned
strategic decision.  We owe deference to
the strategic decisions of counsel. 
Appellant has not identified promising lines of inquiry ignored by
counsel, and we conclude that counsel’s decision not to investigate character
witnesses was reasonable and within the wide range of reasonable professional
assistance.[6]  

            Even if the decision not to
investigate was unreasonable, Appellant has not shown that he suffered
prejudice.  Appellant’s burden is
high.  It is not sufficient to show
merely that the errors had some conceivable effect on the outcome of the
proceeding.  See Strickland,
466 U.S. at 693, 104 S. Ct. at 2067; Williams, 529 U.S. at 394,
120 S. Ct. at 1514; see also Ex parte Varelas, 45 S.W.3d 627, 629
(Tex. Crim. App. 2001).  Virtually every
act or omission of counsel would meet that test.  Strickland, 466 U.S. at 693,
104 S. Ct. at 2067.  Rather, Appellant
must show that counsel’s errors “actually had an adverse effect” on the
case.  See Roe v. Flores–Ortega,
528 U.S. 470, 482, 120 S. Ct. 1029, 1037, 145 L. Ed. 2d 985 (2000) (quoting Strickland,
466 U.S. at 693, 104 S. Ct. at 2067).

            Appellant has not shown that any
failure to investigate had an adverse effect. 
In this case, Appellant had been found guilty of a sexual assault on his
former wife’s seven year old granddaughter. 
During the investigation, Appellant told the police that the complaining
witness sought to stimulate him and that he may have touched her vagina.  Those facts presented a very different
scenario from a drug offense or an imperfect self defense homicide, as were
presented in Milburn and in Shanklin. 

            In contrast to Rompilla and
Wiggins,[7] we have little doubt that counsel
would not have offered any of the character evidence had he known of it.  The witnesses appear to be reasonable people
who care about Appellant, but there was nothing especially compelling about
their testimony.  One of the witnesses
said there was a lack of evidence to support the conviction, while another
asked why Appellant was “prosecuted so severely and unjustly” as the child was “not
kidnapped or raped.”  Furthermore,
Appellant’s own testimony at the punishment hearing illustrates the concern
that his attorney had about calling character witnesses.  The prosecutor asked Appellant the following:
“But, you would agree with me that somebody who committed these offenses ought
to be locked away for a long, long time?” 
Appellant answered, “Yes.”  

            Appellant’s wife was the only
witness to testify in person at the hearing, and her testimony suffered from
the same problems.  She had met Appellant
after the indictment was returned, and she testified that he was honorable,
truthful, and kind, and that on one occasion he gave money to a person who came
up to them in a night club and needed help. 
On cross examination she admitted that she had known him only four years
and that an honorable man does not “rape a small child.”  She stated that any sexual interaction
between Appellant and the child was limited to the child “experimenting” with
him, and that she thought the jury would be persuaded of her belief in
Appellant’s innocence by the fact that she allowed her children and grandchild
to be around him.  In short, while her
testimony did bring out some characteristics that were not otherwise
highlighted, her opinion was based on a version of reality that the jury had
rejected when it found Appellant guilty. 
Finally, the matter of the extraneous offenses is relevant to the harm
analysis.  The character witnesses could
have been asked about the other allegations, something that counsel was able to
minimize during the trial. 

            This case is not like Wiggins
where there was substantial mitigating evidence not offered and the jury was
given the choice between life imprisonment and the death penalty, both very
serious punishments.  And this case is
not like Milburn, where counsel’s reasons for not calling
witnesses—he thought their testimony would be undermined by the fact that his
client had previously been on probation—turned out not to be the case.  Milburn, 973 S.W.2d at
344.  Appellant essentially must prove
that he would have received a lesser sentence if the character evidence he
developed after trial had been offered. 
Appellant does not address this problem directly.  Rather, he complains of other decisions made
by counsel, including calling Appellant as a witness at all, asking questions
about a minor criminal conviction that would have otherwise been unmentioned,
and failing to prepare him for his testimony. 
Appellant also cites Milburn and Shanklin,
in which courts of appeals reversed under similar circumstances.  

            Based upon our review of the record
before us, we think it likely that any benefits to be gained from the use of
character witnesses in this case would be offset if not supplanted by cross
examination of those witnesses. 
Specifically, we have not seen any demonstration that the witnesses put
forward by Appellant would have been able to give helpful answers to questions
about what punishment they thought was appropriate for those who sexually
assault children, or to questions about the other sexual assault
allegation.  In fact, on the record
developed before the trial court, it appears that these witnesses may well have
done harm to Appellant’s position.  After
considering all of the facts, we cannot conclude as a matter of law that
Appellant has shown there is a reasonable probability of a different result if
the witnesses had been called.  We
overrule Appellant’s first and second issues.

 

Out of Court Statements of the Complaining
Witness

            In his third, fourth, fifth, sixth,
seventh, and eighth issues, Appellant argues that the trial court erred when it
allowed witnesses to testify about the complaining witness’s statements to them
relating to the charged offenses. 
Specifically, Appellant argues that the complaining witness’s statements
were inadmissible hearsay and that his constitutional right to confrontation
was violated by the introduction of the statements.

Facts

            Three witnesses testified about
statements made by the complaining witness. 
The first, a schoolmate of the complaining witness, testified that the
complaining witness had told her that Appellant had molested her.  Those conversations had been of a general
nature, but in April 2000, the complaining witness told her specifically about
the sexual assaults.  The witness begged
her to tell her mother.  The complaining
witness refused, but they agreed to tell the witness’s mother.  The witness testified that she, and then the
complaining witness, told the witness’s mother, and they all agreed to tell the
complaining witness’s mother thereafter. 
She testified that the complaining witness then told her own mother
about the sexual assaults.

            The witness’s mother testified that
the complaining witness told her about the assault and that she facilitated the
conversation between the complaining witness and the complaining witness’s
mother.  Finally, the complaining witness’s
mother testified that the complaining witness told her that Appellant had “sexually
molested or abused” her.  She testified
that they reported the matter to the authorities after the complaining witness
told her the story, and had the complaining witness examined by a doctor.

            Appellant objected to this testimony
on the grounds that it was hearsay and that the statements violated his right
to confront witnesses.  The State argued
that it did not seek to introduce the statements for the truth of the matter
asserted.  Rather, it argued, the
statements were offered to show the reasons for the actions taken by the
witnesses after the statements were made. 
The trial court overruled the objections, although it did sustain an
objection with respect to at least one question, and gave limiting instructions
to the jury.  The limiting instructions
were slightly different each time they were given.  The court’s final charge to the jury
instructed the jury that the statements made by the complaining witness, “if
any, were offered for the limited purpose of explaining why [the witnesses]
acted in the manner that they did, and you may consider them for no other
purpose.”

Confrontation
Clause

            Appellant’s third, fifth, and
seventh issues relate to the Confrontation Clause of the United States
Constitution.  The Confrontation Clause
of the Sixth Amendment provides that “[i]n all criminal prosecutions, the
accused shall enjoy the right . . . to be confronted with the witnesses against
him.”  In this context, the Sixth
Amendment confrontation guarantee means that testimonial evidence is inadmissible
unless the defendant has had the opportunity to cross examine the witness.  See Davis v. Washington, 547
U.S. 813, __, 126 S. Ct. 2266, 2273–74, 165 L. Ed. 2d 224 (2006); Crawford
v. Washington, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369, 158 L. Ed. 2d
177 (2004).

            Appellant argues that his right to
confront witnesses was violated because the three witnesses were permitted to
testify as to what the complaining witness told each of them.  The State argues that the Confrontation Clause
was not violated because the statements were not hearsay.  We will discuss whether these statements are
hearsay or not in the following section, but the State’s argument does not
properly apply Crawford. 
The essence of Crawford is that the Constitution requires
cross examination, if requested by a defendant, as a prerequisite to the
admission of testimonial statements by witnesses who do not appear at
trial.  Id., 541 U.S. at
68, 124 S. Ct. at 1374 (“Where testimonial evidence is at issue, however, the
Sixth Amendment demands what the common law required: unavailability and a
prior opportunity for cross-examination.”). 
The bar to be cleared is the Confrontation Clause.  Whether a particular piece of evidence is
admissible under the rules of evidence simply is not the appropriate inquiry—evidence
that is forbidden by the Confrontation Clause is inadmissible, and the rules of
evidence do not provide an alternate route of admissibility.  See Shuffield v. State,
189 S.W.3d 782, 790–91 (Tex. Crim. App. 2006).

            There are two problems with
Appellant’s Confrontation Clause argument, however.  First, the complaining witness, whose
statements were admitted, testified at trial. 
It is not clear that her statements were testimonial.  But even if they were, the Confrontation
Clause and Crawford place no restraints “at all on the use of
prior testimonial statements” when the “declarant appears for cross-examination
at trial.”  Id., 541
U.S. at 59 n.9, 124 S. Ct. at 1369 n.9 (citing California v. Green,
399 U.S. 149, 162, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970)).  Second, the Court held in Crawford
that the Confrontation Clause “does not bar the use of testimonial statements
for purposes other than establishing the truth of the matter asserted.”  Crawford, 541 U.S. at 59 n.9,
124 S. Ct. at 1369 n.9.  Either rationale
is sufficient to allow these statements to clear the Confrontation Clause
bar.  Appellant had the opportunity to cross
examine the speaker, and the statements were admitted for a reason other than
the truth of the matter asserted.  As
such, Appellant’s right to confront witnesses was not violated.[8]  We overrule Appellant’s third, fifth, and
seventh issues.

Hearsay

            In his fourth, sixth, and eighth
issues, Appellant argues that these statements were hearsay and that no hearsay
exception applies.  We review a trial
court’s decision to admit evidence over a hearsay objection for an abuse of
discretion.  See Willover v. State,
70 S.W.3d 841, 845 (Tex. Crim. App. 2002). 
We will not disturb the evidentiary ruling of the trial court unless it
falls outside the zone of reasonable disagreement.   See
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

            The rules of evidence forbid hearsay
statements.  See Tex. R. Evid. 801(d).  By rule, hearsay is “a statement, other than
one made by the declarant while testifying at the trial or hearing, offered in
evidence to prove the truth of the matter asserted.”[9]  Id.

            The statements here were offered not
to prove the assertions within them, but to show what actions the witnesses
took after receiving that information. 
This makes the statements nonhearsay, because they are not offered for
the truth of the matter asserted.  See
Tennessee v. Street, 471 U.S. 409, 414, 105 S. Ct. 2078, 2081–82;
85 L. Ed. 2d 425 (1985) (jury instruction sufficient to protect against use of
out of court statement for the truth of the matter asserted); Martinez v.
State, 22 S.W.3d 504, 508 (Tex. Crim. App. 2000) (statement not hearsay
if not offered to prove truth of the matter asserted); Dinkins v. State,
894 S.W.2d 330, 347-48 (Tex. Crim. App. 1995). 


            Appellant cites Schaffer v.
State, 777 S.W.2d 111, 114–15 (Tex. Crim. App. 1989), for the
proposition that a police officer may not testify about historical aspects of
the case, “replete with hearsay statements in the form of complaints,” under
the guise of explaining the reasons for the officer’s subsequent actions.  Schaffer is distinguishable on
two important grounds.  First, the
hearsay in Schaffer was indirect hearsay.  Although not eliciting the statement itself,
the State “did indirectly that which it could not do directly,” that is admit
the contents of the absent witness’s statement. 
Id. at 114.  The court
held that when the evidence is being offered to prove the statement made
outside of court, clever framing of questions will not make the implied
assertions in the answers nonhearsay.  Id.  In Head v. State, 4 S.W.3d 258,
263 (Tex. Crim. App. 1999), the court of criminal appeals considered an
analogous case involving implied hearsay. 
In that case, the court acknowledged that it was a close case but held
that the trial court could have reasonably concluded that the “testimony did
not reveal to the jury the substance of the out-of-court statements,” and so
there was not an implied assertion.  Id.

            By contrast, in this case, the
actual out of court statements were admitted. 
Therefore, the rule from Shaffer and Head
does not apply because there is no question, as there was in those cases, as to
whether the out of court statements made their way to the jury; they did.  The statements would be hearsay if offered
for the truth of the matter asserted. 
But therein lies the second distinction between this case and Schaffer.  In Schaffer the implied
statements made it to the jury, and the jurors were permitted to consider those
statements for the truth of the matter implied. 
Schaffer, 777 S.W.2d at 114 (“We therefore hold that the
trial court improperly allowed the State to introduce hearsay testimony before
the jury.”).  In this case, the State did
not offer these statements to prove their contents, and they were not admitted
for that purpose.  Rather, it offered
them to show what the recipients did after hearing the information and to
explain the course of events that followed. 
The jury was instructed accordingly.

            Such evidence is permissible, but
there remain boundaries.  The out of
court statements must have relevance other than to prove the contents of the statements.  See Delapaz v. State,
228 S.W.3d 183, 211 (Tex. App.–Dallas 2007, pet. filed).  Stated another way, a statement is hearsay
unless its relevance does not depend on its being true.  See Bell v. State, 877 S.W.2d
21, 24 (Tex. App.–Dallas 1994, pet. ref’d).[10]  Appellant did not object on the grounds that
the evidence was irrelevant.  Assuming
that Appellant’s blanket hearsay objection was sufficient to apprise the trial
court that the statements should not be admitted because they were not relevant
if untrue, the trial court did not abuse its discretion.  It allowed the statements to show what the
witnesses did after being told of the assault because those actions did not
depend on the statements being true.  

            Appellant further complains that the
evidence admitted was broader than was necessary simply to show the reasons for
the witnesses’ actions.  For the most
part, the State did ask its witnesses to relate what they had been told in a
limited fashion, not to repeat the words, and to generalize.  At least twice Appellant made further
objections when a witness began to relate the details of the complaining
witness’s report, and those objections were sustained.  But there was also testimony that included
the specifics of the sexual assault.  Those specifics were not relevant to show why
witnesses reported it to the next person.

            Appellant obtained a running
objection to hearsay evidence.  Assuming
this running objection was sufficient to preserve a complaint that the
specifics of Appellant’s assault were not relevant, and further assuming that
the trial court abused its discretion in allowing that testimony, any error in
the admission of inadmissible hearsay is nonconstitutional error.  See Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998); Lee, 21 S.W.3d at
538.  Nonconstitutional error that does
not affect substantial rights must be disregarded.  See Tex.
R. App. P. 44.2(b).  A substantial
right is affected when the error had a substantial and injurious effect or
influence in determining the jury’s verdict. 
King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App.
1997).  

            Appellant argues that he was harmed
because his right to cross examine witnesses was damaged.  He also argues that he could not effectively
cross examine because he had to discredit four people and not just the
complaining witness and that, because of the out of court statements, he “had
been convicted before [the complaining witness] even testified.”  These arguments do not show harm.  Appellant had every opportunity to cross
examine witnesses.  In fact, some
attorneys would relish the opportunity to examine a story from four different
angles, with the vagaries of hindsight and memory, in an attempt to confuse the
issues, if nothing else.  See, e.g.,
United States v. Wade, 388 U.S. 218, 257, 87 S. Ct. 1926, 1948,
18 L. Ed. 2d 1149 (1967) (J. White, concurring in part, dissenting in part)
(Writing about defense attorneys in criminal cases, Justice White wrote: “If he
can confuse a witness, even a truthful one, or make him appear at a
disadvantage, unsure or indecisive, that will be his normal course.”).  Furthermore, Appellant did not need to
discredit the other witnesses with respect to the statement they heard from the
complaining witness.  Two of the three
witnesses readily admitted that they did not know anything about the offense
except what they had heard from the complaining witness; the third witness was
not asked.[11] 

            The trial court instructed the jury
not to consider the statements for the truth of the matters asserted, and the
complaining witness testified.  The
complaining witness, a member of the U.S. Army at the time of trial, apparently
made a good witness,[12] testified about the specifics of the
complaint herself, and was available for cross examination.  Furthermore, Appellant made a statement to
the police that included an account that jurors could have taken as an
admission of some of the allegations against him.  In light of the circumstances, we are
persuaded that any error in admitting the specifics of the complaining witness’s
out of court report of the assault did not prejudice Appellant’s substantial
rights.  We overrule Appellant’s fourth,
sixth, and eighth issues.

 

Disposition

            Having overruled Appellant’s eight
issues, we affirm the judgment of the trial court.

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

Opinion delivered November 30,
2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

(DO NOT PUBLISH)











[1] One portion of the
record is difficult to parse:

                Q:            Did you ever talk to [Appellant]
about character witnesses, or do you recall?

                A:            I’m not certain.  We did talk about – – yeah, we did.  We did talk about that.

                Q:            Did you talk with [Appellant] about
whether or not there might be people out there who could say something that
would be beneficial to his case?

                A:            No. 
But, I suspect this couple sitting on the front row seem to have an
opinion about every answer I give.  I
should have talked to them because I’m sure they would have had a key to the
kingdom on this case.

                And then

                Q:            . . . [w]as he able to give you any
information or any witnesses that might be beneficial to his case?

                A:            Not really.





[2] Counsel was also concerned that the witnesses would be cross examined
about the other sexual assault allegation. 
This is a reason not to call a witness, but not a reason not to
investigate.





[3] We think counsel could have reasonably anticipated the kind of
character witnesses who were developed in the motion for new trial.  They were Appellant’s new wife, children,
coworkers, and some of his new wife’s friends. 
They have affection for Appellant, but the character evidence they could
have offered was little more than that. 





[4] The petition for discretionary review was sought on a ground not
related to pretrial investigation.





[5] Appellant does not argue that the investigation itself was below
professional standards, just that leads were not investigated.  In his brief, he essentially asks us to hold
that “[Counsel] must investigate all leads which might generate
mitigating evidence such as character witnesses who could put a favorable light
on the client, and encourage jurors to assign a lower sentence.”  To the extent that his argument could be
construed as a contention that investigation of character witnesses is required
by some professional standard, Appellant has not shown such a professional
standard, and Strickland stands for the proposition that some
limitations on investigation of character evidence can be reasonable.  See Strickland, 466 U.S.
at 699, 104 S. Ct. at 2070–71.





[6] Appellant also asks rhetorically in his brief why his attorney did not
present the fourteen character witnesses. 
The decision not to present witnesses who have been investigated is a
different question.  Counsel’s decisions about
which witnesses to call are afforded substantial deference.  See Weisinger v. State,
775 S.W.2d 424, 427 (Tex. App.–Houston [14th Dist.] 1989, pet. ref’d).





[7] In each case, defense counsel did not uncover the truly atrocious
conditions in which the defendant had grown up. 
See Rompilla, 545 U.S. 374, 391–92, 125 S. Ct. at 2468–69;
Wiggins, 539 U.S. at 516–17, 123 S. Ct. at 2533.





[8] Appellant also argues, without citation to authority, that his right to
confront witnesses was violated because he was not able to cross examine the
witness near in time to when the statements were made.  While the Confrontation Clause causes many
cross examinations to occur closer in time to accusatory statements, because it
excludes many out of court accusations, that is not its purpose.  We are aware of no timeliness requirement
imposed by the Confrontation Clause, and Appellant has not directed us to any
authority for such a proposition. 





[9] The Texas rules are broader than the Federal Rules of Evidence and do
not permit evidence that includes an implied assertion.  See Mosley v. State, 141
S.W.3d 816, 830 (Tex. App.–Texarkana 2004, pet. ref’d); Cathy Cochran, Texas Rules of Evidence Handbook, 766–772 (5th
ed. 2003).





[10] Another limitation, not raised by Appellant, is that
even a relevant statement may be inadmissible under Rule of Evidence 403 if it
is unduly prejudicial.  See Cochran, supra note 9, at 782,
n.124 (citing United States v. Reyes, 18 F.3d 65, 70–71 (2d Cir.
1994)).





[11] For reasons that are difficult to discern, the State
asked the witnesses if they believed the complaining witnesses.  Quoting again from Justice White: “[Prosecutors]
must be dedicated to making the criminal trial a procedure for the
ascertainment of the true facts surrounding the commission of the crime.” Wade,
388 U.S. at 256, 87 S. Ct.. at 1947.  Appellant
did not object to this bolstering testimony, but seeking to show the veracity
of statements admitted for reasons other than the truth of the matter asserted
is inconsistent with the rationale for their admission.





[12] This conclusion is not based on our assessment of her
testimony, but based on Appellant’s counsel’s statement during trial that she
had been an effective witness and his statement to the same effect during the
hearing on the motion for new trial.