**Kim Allen MILBURN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–96–00260–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 4, 1998.

Brian W. Wice, Houston, for appellant.

Rikke Burke Graber, Houston, for appellee.

Before YATES, EDELMAN and O'NEILL, JJ.

## OPINION

YATES, Justice.

Appellant, Kim Allen Milburn, was convicted of possession with intent to deliver cocaine weighing at least 400 grams. *See* TEX. HEALTH & SAFETY CODE § 481.112(f) (Vernon 1994). In his sole point of error, appellant contends the trial court erred in denying his motion for new trial based on ineffective assistance of counsel. We affirm in part and reverse and remand in part.

## Background

On June 30, 1995, as part of an ongoing narcotics investigation, Houston Police Officer Eller set up surveillance at an apartment complex. That afternoon, Officer Eller saw Douglas Hooey, Edmond Routt, Madelyn Woodson, and appellant leaving an apartment. Hooey was carrying a diaper bag over his shoulder, and Routt was holding a white plastic bag. As the group walked to the parking lot, Routt handed the plastic bag to appellant. Hooey and Woodson left in one car, and Routt and appellant left in another. Officer Eller called for assistance and followed the two cars out of the apartment complex.

At the intersection of Greens Parkway and Ella Road, both drivers ran a stop sign and turned right without signaling. The police stopped both vehicles. As Sergeant Brown approached the vehicle Routt was driving, he saw appellant attempting to push something underneath the passenger seat. Brown looked on the floorboard of the back seat and saw a plastic bag containing crack cocaine. He then removed appellant from the car, patted him down and discovered $4,800 in cash in his pocket. After arresting both appellant and Routt, the police conducted an inventory search of the vehicle and discovered approximately $7,000 in the glove compartment.

Appellant was charged with possession of a controlled substance with intent to deliver. After pleading not guilty, appellant was convicted by a jury and punishment was assessed at forty years confinement and a $75,000 fine. Appellant filed a motion for new trial claiming ineffective assistance of counsel during the guilt-innocence and punishment phases of his trial, and the trial court denied the motion. This appeal followed.

## Guilt/Innocence Phase

### Standard of Review

A trial court's denial of a motion for new trial will not be disturbed absent a clear showing of abuse of discretion. *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Crim.App. 1993). The standard of review for ineffective assistance of counsel during the guilt-innocence phase of trial is a two step analysis articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996). First, the appellant must demonstrate counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688, 104

S.Ct. at 2064. Counsel's competence is presumed, and the appellant must rebut this presumption by identifying the acts or omissions of counsel that are alleged as ineffective and affirmatively prove that they fell below the professional norm of reasonableness. *See McFarland,* 928 S.W.2d at 500. An ineffectiveness claim cannot be demonstrated by isolating any portion of counsel's representation, but is judged on the totality of the representation. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065.

■ Second, the appellant must establish counsel's performance was so prejudicial, it deprived appellant of a fair trial. *See id.* To satisfy this prong, appellant must show that a reasonable probability exists that, but for counsel's unprofessional errors, the factfinder would have reasonable doubt with respect to guilt. *See McFarland,* 928 S.W.2d. at 500. Reasonable probability means a probability sufficient to undermine confidence in the outcome, and appellant has the burden of making this showing by a preponderance of the evidence. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

### Article 38.23 Instruction

Appellant initially argues he was denied effective assistance because his attorney failed to obtain a jury instruction pursuant to Article 38.23 of the Texas Code of Criminal Procedure.[1] Specifically, appellant argues his attorney failed to call Edmond Routt as a witness during his trial. At the hearing on the motion for a new trial, Routt testified that if he had been called as a witness, he would have testified he did not commit the traffic violations on which the State relies for probable cause to stop and detain appellant. Appellant points out that where the evidence raises a fact issue as to probable cause, the defendant is entitled to a jury instruction in accordance with Article 38.23. *See Washington v. State,* 663 S.W.2d 506, 508 (Tex.App.—

Houston [1st Dist.] 1983, pet. ref'd) (*citing Merriweather v. State,* 501 S.W.2d 887 (Tex. Crim.App.1973)).

Ben Durant, appellant's trial counsel, also testified at the hearing on the motion for new trial. Durant testified he chose the driver of the other car, Douglas Hooey, to testify at appellant's trial instead of Edmond Routt because he believed Routt's prior conviction would subject him to impeachment. Hooey refused to testify, however, after being asked to do so on several occasions. According to Durant's testimony, he did ask for a 38.23 instruction at the conclusion of his cross-examination of the police officers, but the trial court denied the request. Durant had introduced a videotape of the parking lot of the apartment and the intersection of Greens Parkway and Ella Road. With the videotape, Durant attempted to contradict and discredit the officers' testimony.

■ Durant's efforts to obtain the 38.23 instruction through other means will not support a finding of ineffectiveness. The fact that another attorney might have pursued another trial strategy will not support a finding of ineffectiveness of counsel. *Ortiz v. State,* 866 S.W.2d 312, 315 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd) (*citing Blott v. State,* 588 S.W.2d 588, 592 (Tex.Crim.App. 1979)). Furthermore, it is trial counsel's prerogative, as a matter of trial strategy, to decide which witnesses to call and not that of the client. *See Weisinger v. State,* 775 S.W.2d 424, 427 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). Although appellant argues Durant failed to determine Routt was available to testify because Durant stated, "it just didn't get done," Durant's testimony at the hearing establishes he made a strategic decision not to call Routt as a witness and to use other means to attempt to raise a fact issue concerning the legality of the stop. Therefore, we conclude Durant's failure to

---

1. Article 38.23(a) states as follows:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an

issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of the Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon 1986).

call Routt as a witness was reasonable and based on trial strategy. We will not use hindsight to second guess a tactical decision made by trial counsel which does not fall below the objective standard of reasonableness. *See Solis v. State,* 792 S.W.2d 95, 100 (Tex.Crim.App.1990).

Appellant next argues Durant made three additional errors during the guilt-innocence phase which he contends are not prejudicial standing alone, but show that the totality of counsel's performance was deficient.

### Transcript

■ First, appellant argues Durant failed to obtain a transcript of Douglas Hooey's trial. Hooey's trial ended in a mistrial because of his conduct during the trial and jury misconduct. Durant testified he felt Hooey's transcript was unnecessary because he was present at Hooey's trial and saw the officers testify. He also cross-examined them at appellant's suppression hearing. Therefore, Durant was able to anticipate and prepare for the officers' testimony without Hooey's trial transcript. Although the transcript may have been helpful for impeachment purposes, the failure to obtain the transcript does not make Durant's assistance ineffective. *See Richardson v. State,* 666 S.W.2d 336, 340 (Tex.App.—Houston [1 st Dist.] 1984, no pet.) (failure of defendant's second attorney to obtain a transcript was not ineffective assistance because he conferred with prior counsel and his client about testimony or conduct at the first trial).

### Jury Argument

Appellant next argues Durant failed to preserve error when the prosecutor injected his personal opinion during final argument at the guilt stage. Specifically, appellant points to the following two statements made by the prosecutor. In the first statement, the prosecutor said:

*If you think that I tried this case believing or knowing that Kim Milburn is not guilty, I want you to call this number and ask for John Holmes, and I want you to ask him to fire me right now.* That's a bunch of crap. I do not appreciate anyone accusing me of doing that.

This argument apparently occurred in response to the following argument by Durant:

He's [the prosecutor's] going to say, ladies and gentlemen, look at this, look at that. He wants to get you all fired up. We've got to hang somebody. So, the heck with it. I mean, you know, if a person's there, let's hang somebody that's around, let's shoot them. Kim Milburn's there, he's there in the car, the dope in the car, so he must be guilty.

The trial court admonished the prosecutor before Durant had the opportunity to object. Durant requested and received an instruction to disregard the prosecutor's statements, but failed to ask for a mistrial.

In the second complained of statement, the prosecutor said:

Mr. Durant has suggested to you that the fact that Mr. Milburn's name was never mentioned or his [sic] he was never seen in this area before must mean something significant. It must mean that Mr. Milburn is not guilty. That's ridiculous. *You know it and I know it.*

Durant objected to these statements, but failed to request an instruction to disregard or move for a mistrial.

■ Permissible jury argument falls within four areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) responses to opposing counsel's argument; and (4) pleas for law enforcement. *Coble v. State,* 871 S.W.2d 192, 204 (Tex. Crim.App.1993). It is improper, however, for a prosecutor to inject personal opinion in statements to the jury if he implies a special expertise coupled with an implied appeal to the jury to rely on that expertise in deciding the contested issues. *See Johnson v. State,* 698 S.W.2d 154, 167 (Tex.Crim.App.1985).

■ In this case, the State argues that the first comment was proper because it was in response to defense counsel's argument. *See Coble,* 871 S.W.2d at 204; *see also Soto v. State,* 864 S.W.2d 687, 693 (Tex.App.—Houston [14 th Dist.] 1993, pet. ref'd) (if defense counsel invites argument, then it is appropriate for the State to respond). We agree that the prosecutor's remarks were in response to

Durant's argument which hinted that the jury would be asked to convict appellant simply based on his presence in the car and not whether he was actually guilty of the offense. The prosecutor responded in his argument that he should be fired by his boss if he tried to convict someone he believed or knew was not guilty. Thus, we do not believe the statement could be construed as improper.

We find the second statement was also not improper. Here, the prosecutor never inferred to the jury that it should rely on his special expertise as a prosecutor, but instead, on common sense and on reasonable deductions from the evidence presented at trial. *See Coble,* 871 S.W.2d at 204; *Johnson,* 698 S.W.2d at 167. Thus, Durant's failure to request an instruction to disregard or to move for a mistrial was not ineffective. *See McFarland v. State,* 845 S.W.2d 824, 844 (Tex.Crim.App.1992) (en banc) (counsel is not ineffective for failing to object to proper jury argument).

*Voir Dire*

Finally, appellant argues Durant failed to preserve error during voir dire. At the end of voir dire, a venire member was brought up to the bench for further questioning after claiming she would give more credibility to a police officer merely because he was a police officer. The following exchange took place between the prospective juror and Durant:

DURANT: "If he [police officer] walks in with his uniform on and he is a police officer and I walk in, just an ordinary person, wouldn't you give him more credibility than you would another person because he is a police officer?"

VENIRE MEMBER: "I would have to hear all the evidence."

DURANT: "We are talking about before you hear the evidence, would you give him more credibility?"

VENIRE MEMBER: "No, not until I heard the entire case. No, I wouldn't."

DURANT: "Let's pretend you did hear the entire case, would you give him more credibility and more be-lievability simply because he is a police officer?"

VENIRE MEMBER: "Well, it depends on what he says and what the other person says. As far as who you are going to believe, I can't answer that."

DURANT: "But I am simply saying—we are talking about their testimony, what they said or whatever. Would you give them more credibility and believability simply because they are the police? That's all I am asking you, ma'am."

VENIRE MEMBER: "I would have to say, no."

The trial court denied Durant's challenge for cause of this venire member, and Durant used a peremptory challenge to eliminate her. Appellant claims Durant erred in failing to state for the record that he was forced to take an objectionable juror and not asking for an additional peremptory challenge.

Article 35.16 (c)(2) of the Code of Criminal Procedure provides in part: "A challenge for cause may be made by the defense for any of the following reasons: That he has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely...." TEX. CODE CRIM. PROC. ANN. art. 35.16(c)(2) (Vernon 1995). Since, upon further questioning, the venire member clarified her earlier statements, we find there existed no valid basis for a challenge for cause and it was properly denied by the trial judge. Thus, because there was no error to preserve, Durant could not be ineffective for failing to do so. *See Hunnicutt v. State,* 531 S.W.2d 618, 624 (Tex. Crim.App.1976); *Jones v. State,* 950 S.W.2d 386, 389 (Tex.App.—Fort Worth 1997, pet. ref'd, untimely filed); *Carmona v. State,* 880 S.W.2d 227, 236 (Tex.App.—Austin 1994), *rev'd on other grounds,* 941 S.W.2d 949 (Tex. Crim.App.1997) (counsel is not ineffective for failing to object to admissible evidence).

**Punishment Phase**

*Standard of Review*

Appellant also argues he was denied effective assistance at the punishment

phase of his trial. When the alleged error of counsel deals with the punishment phase as opposed to the guilt-innocence stage, the standard of review can be found in *Ex parte Duffy*, 607 S.W.2d 507, 516 (Tex.Crim.App. 1980). *See Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Crim.App.1987). Under *Duffy*, the effectiveness of counsel is to be judged by the "reasonably effective assistance of counsel" standard. *Id.* The second prong of *Strickland* is not applicable to the punishment phase, and the sufficiency of an attorney's assistance is gauged by the totality of the representation of the accused. *See Ex parte Walker*, 777 S.W.2d 427, 431 (Tex.Crim.App. 1989). The appropriate examination of the record includes counsel's representation during pretrial, the guilt-innocence stage of the trial, and the punishment stage. *Rodd v. State*, 886 S.W.2d 381, 384 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd); *Dedesma v. State*, 806 S.W.2d 928, 935 (Tex.App.—Corpus Christi 1991, pet. ref'd).

### Jury Argument

■ During the punishment hearing, appellant contends the prosecutor again injected improper personal opinion into his argument, and Durant failed to request an instruction or move for a mistrial. The prosecutor made the following argument:

> Ladies and Gentlemen, what I'm going to ask you to do at this point is to tailor a sentence which is appropriate for this case. *And I think that you folks now understand why I was so passionate about this case*—about this Defendant knowing what was in the car. . . .

We find the statements were not improper personal opinion because the prosecutor was not giving an opinion but only making a personal statement. *See Johnson*, 698 S.W.2d at 154. Again, Durant's failure to ask for an instruction or mistrial was not ineffective.

### Failure to Interview & Call Witnesses

Appellant next contends the failure to call witnesses at the punishment hearing was ineffective assistance because several relatives, friends, and coworkers were available to testify on appellant's behalf. At the hearing on the motion for new trial, the parties stipulated to the testimony of twenty of appellant's relatives and friends. They stipulated that each witness would have testified they had known appellant for a long period of time, they were never contacted to testify by any member of the defense team, they would have testified had they been requested to and that they would have asked the jury to consider the minimum punishment.[2] They further stipulated that the potential witnesses knew appellant was on probation and that this knowledge would not have affected their testimony.

Additionally, at the motion for new trial hearing, appellant's fiancee, Crystal Jackson, testified that she was never contacted by appellant's lawyer about the possibility of testifying at the punishment hearing. She stated that she and appellant have a young daughter with severe medical problems and that appellant was a good father and very active in raising their daughter. David Allen also testified at the hearing. He stated that he has known appellant for fifteen or sixteen years and had employed appellant as a property manager on a part-time basis for over a year. He further stated appellant was an outstanding employee and had he been contacted by appellant's attorney, he would have been willing to so testify.

According to Durant's testimony, he chose not to call any witnesses during the punishment phase based primarily on his prior trial experience and his belief that jurors don't generally place much weight on the testimony of family members. In addition, he was concerned that their testimony would open the door to "Did you know" or "Have you heard" questions from the prosecutor. Durant thought this could potentially hurt the defense because of appellant's prior probation record in Louisiana. Durant also contended that calling coworkers to testify would be equally dangerous as it would have allowed the State to question the witnesses

2. The jury charge at the punishment hearing instructed the jury that the range of punishment was from fifteen to ninety-nine years or life imprisonment and a fine not to exceed $250,000. *See* Tex. Health & Safety Code § 481.112(f) (Vernon 1994).

about appellant's income, and whether appellant was paid in large sums of cash such as the amount found in appellant's possession when he was arrested. Part of Durant's trial strategy was not to give the prosecution "any more ammo to shoot us with."

An attorney's decision not to present particular witnesses at the punishment stage may be a strategically sound decision if the attorney bases it on a determination that the testimony of the witnesses may be harmful, rather than helpful, to the defendant. *See Weisinger*, 775 S.W.2d at 427 (it is trial counsel's prerogative, as a matter of trial strategy to decide which witnesses to call); *Rodd*, 886 S.W.2d at 385 (court unable to conclude counsel ineffective when appellant failed to bring forth any evidence concerning counsel's strategic reasons for failing to call twenty-two affiants who testified to appellant's good character at the hearing on the motion for new trial).

However, appellant contends Durant cannot rely on trial strategy because he not only failed to call witnesses, but he failed to investigate and interview potential witnesses. Appellant relies on the following language from *Ex parte Duffy:* "[i]t may not be argued that a given course of conduct was within the realm of trial strategy unless and until the trial attorney has conducted the necessary legal and factual investigation which would enable him to make an informed rational decision." *See Ex parte Duffy*, 607 S.W.2d at 526; *see also Chambers v. Armontrout*, 907 F.2d 825, 828 (8 th Cir.1990) (a decision to interview a potential witness is not a decision related to trial strategy; rather, it is a decision related to adequate preparation for trial).

The State responds by arguing Durant's decision was based on trial strategy because he spoke casually to several of the potential character witnesses throughout the trial and could have made a determination as to how they would testify without actually interviewing them. We disagree with this contention. As noted above, Durant stated he did not call witnesses during the punishment phase because he thought it would open the door to "Did you know" or "Have you heard" questions concerning appellant's prior

probation. However, had Durant actually interviewed appellant's family members and friends, he would have discovered the witnesses were aware of appellant's probation status in Louisiana, and thus, their credibility may not have been diminished by this information. Without some investigation, Durant was in no position to evaluate whether their testimony would either help or harm the appellant. Further, Durant stated his strategy was not to give the prosecution "any more ammo to shoot us with." In this case, the prosecution had the most damaging "ammunition" already at its fingertips, that is—appellant's prior probation record, and Durant knew it was going to be introduced by the State regardless of whether he presented any witnesses at the punishment hearing. Additionally, while Durant expressed concern about calling co-workers to testify due to the large amount of cash appellant was arrested with, his failure to interview any co-workers prevented him from discovering any potential explanation to the jury about the existence of the money; thus leaving the jury to assume it was illegally obtained. Finally, although the fear of having a witness impeached with unfavorable information may justify not calling the witness to testify, it does not justify not interviewing that witness at all. *See Butler*, 716 S.W.2d 48, 56 (Tex.Crim.App. 1986).

In sum, Durant could not have reasonably determined whether character witnesses would pose a risk of disclosing past criminal behavior without first determining whether any such behavior existed by investigating appellant's background and interviewing appellant, his friends, or family. This decision is a prime example of a strategic choice made after a less than adequate investigation which, therefore, is not supported by informed professional judgment. *See Strickland*, 466 U.S. at 690–91, 104 S.Ct. at 2066 (strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitations on investigation).

The State also argues we should adhere to our previous decisions which have held the failure to call witnesses during the punishment phase is related to trial strategy and is

not ineffective assistance. *See, e.g., Ortiz,* 866 S.W.2d at 315; *Hoang v. State,* 825 S.W.2d 729, 732–33 (Tex.App.—Houston [14 th Dist.] 1992, pet. ref'd). However, we find that both *Ortiz* and *Hoang* are factually distinguishable from the instant case. *Ortiz* involved a non-jury punishment hearing in which the court had a pre-sentence investigation report containing many letters from friends and relatives attesting to appellant's good character. *See Ortiz,* 866 S.W.2d at 315. Thus, we held in *Ortiz,* the failure of trial counsel to call witnesses other than appellant was not ineffective assistance. *See id.* Conversely, in this case, punishment was assessed by a jury, and the jury did not have the benefit of a sentencing report. In fact, without any witnesses, appellant was deprived of, and the jury did not hear, *any* character evidence.

In *Hoang,* we held trial counsel's assistance was not ineffective at punishment because appellant failed to demonstrate how the witnesses' testimony would have benefitted him, and we found counsel's reason for not calling witnesses plausible. *See Hoang,* 825 S.W.2d at 733; *see also King v. State,* 649 S.W.2d 42, 44 (Tex.Crim.App.1983) (counsel's failure to call witnesses at punishment phase of trial irrelevant absent showing that they were available or that defendant would have been aided by their testimony.) Here, appellant did demonstrate that witnesses were available and would have testified on his behalf and that their testimony would have portrayed him as a family man and a good employee. More importantly, in *Hoang,* unlike in this case, there was no allegation that counsel failed to investigate and interview potential witnesses. *See Hoang,* 825 S.W.2d at 733. Thus, counsel's tactical decision was found to be reasonable. *See id.*

The United States Supreme Court has also held the failure to present mitigation evidence at punishment is not ineffective assistance when it is based on counsel's trial strategy. *See, e.g., Burger v. Kemp,* 483 U.S. 776, 794–95, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987); *Strickland,* 466 U.S. at 678–700, 104 S.Ct. at 2070–71. In *Burger,* the Supreme Court held that counsel made a reasonable decision to forego presentation of mitigating evidence after evaluating available testimony, determining that cross-examination would reveal matters prejudicial to the defendant and opting instead to make a lesser culpability argument to the jury. *See Burger,* 483 U.S. at 794–95, 107 S.Ct. at 3125–26.

Similarly, in *Ex parte Kunkle,* the Court of Criminal Appeals found appellant's counsel was not ineffective for failing to present mitigating evidence because counsel's decision was a strategic, deliberate decision made after a thorough investigation of the facts and the law. *See Ex parte Kunkle,* 852 S.W.2d 499, 506 (Tex.Crim.App.1993). Unlike *Burger* and *Ex parte Kunkle,* in this case, based on Durant's own testimony that he made no investigation into potential witnesses, no such investigation of the facts or evaluation of available testimony was made.

While we have found no Texas case that has found an attorney to be ineffective for failing to investigate or call witnesses at the punishment phase, other courts have not been reluctant to do so. *See, e.g., Austin v. Warden,* 126 F.3d 843, 848 (6 th Cir.1997) (the failure to present mitigation evidence when several relatives, friends, death penalty experts, and a minister were available to testify was an abdication of advocacy); *Hall v. Washington,* 106 F.3d 742, 749 (7th Cir. 1997) (holding defense counsel was ineffective at sentencing when he failed to make a significant effort, based on reasonable investigation and logical argument, to ably present the defendant's fate to the jury and to focus the attention of the jury on any mitigating factors); *Glenn v. Tate,* 71 F.3d 1204, 1207 (6 th Cir.1995) (defendant's lawyers were inadequately prepared for sentencing phase when they did not acquaint themselves with defendant's social history, never spoke to any of his numerous brothers and sisters, never examined his medical records, or talked to his probation officer); *Tucker v. Day,* 969 F.2d 155, 159 (5 th Cir.1992) (counsel was ineffective when he failed to provide any assistance at a sentencing hearing, stating, "I'm just standing in for this one"); *Kubat v. Thieret,* 867 F.2d 351, 367 (7th Cir.1989) (substandard argument and the presentation of no evidence, despite the availability of fifteen character witnesses at sentencing, amounted to

no representation at all); *People v. Ruiz*, 177 Ill.2d 368, 226 Ill.Dec. 791, 686 N.E.2d 574, 582 (1997) (counsel's failure to investigate and present mitigating evidence, which a research of defendant's background would have revealed, was representation which fell below objective standards of reasonableness under prevailing professional norms).

Further, it has long been the law in Texas that counsel has the responsibility to seek out and interview potential witnesses. *Ex parte Welborn*, 785 S.W.2d at 391. And Texas courts have not hesitated to find counsel ineffective at the guilt/innocence phase for failing to do so. *Id.; see also Butler*, 716 S.W.2d at 48; *State v. Thomas*, 768 S.W.2d 335 (Tex.App.—Houston [14th Dist.] 1989, no pet.).

In sum, we have reviewed the totality of counsel's representation at trial and we believe counsel's representation fell below the "reasonably effective assistance of counsel" standard at the punishment stage. His failure to seek out, investigate and interview witnesses rendered the adversarial process presumptively unreliable. As a result, the jury had no mitigation evidence before it to offset appellant's probation record, the prosecutor's argument at punishment that appellant had abused the legal system and had not been rehabilitated, or his recommendation of thirty years imprisonment. The standard of performance which is required of trial counsel was best articulated by the Seventh Circuit:

> [W]e hold defense must make a significant effort, based on reasonable investigation and logical argument, to ably present defendant's fate to the jury and focus the attention of the jury on any mitigating factors. Mitigating factors brought out at trial might be emphasized, a coherent plea for mercy might be given, or new evidence in mitigation might be presented. But counsel may not treat the sentencing phase as nothing more than a mere postscript to the trial.

*Kubat*, 867 F.2d at 369.

Accordingly, we sustain appellant's point of error as to the punishment phase, and reverse the judgment of the trial court and remand the case for a new punishment hear-ing pursuant to Article 44.29(b) of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon 1997).

The judgment of the trial court is affirmed in part and reversed and remanded in part.