Affirmed and Memorandum Opinion filed April 28, 2009








Affirmed and Memorandum Opinion filed April 28, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00134-CR

_______________

 

CLARA MARIE ALLEN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 177th District Court

Harris County, Texas

Trial Court Cause No. 1107143 

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

Appellant
Clara Marie Allen pleaded guilty to aggregate theft without an agreed
recommendation on punishment from the State.  She also pleaded Atrue@ to two enhancement paragraphs, one
for felony forgery and the other for felony theft.  After a punishment hearing,
the trial court sentenced her to sixty years= confinement.  In this appeal, she
asserts that (a) her trial counsel was ineffective during the punishment
hearing and (b) she received a cruel and unusual sentence.  We affirm.








I.  Background

Appellant
used a credit card issued by her employer to charge over $75,000 worth of
personal items, from airline tickets to jewelry to meals at restaurants.  In
December 2007, she pleaded guilty without a plea agreement to the charge of
aggregate theft resulting from her misuse of this company credit card.[1] 
She judicially confessed to two enhancing felony convictions, one for forgery
and the other for a prior theft.  She acknowledged that she would be sentenced
as a habitual offender, with a range of punishment from twenty-five to
ninety-nine years= confinement for the instant offense.  The trial court
withheld a finding of guilt so that a pre-sentence investigation report (APSI report@) could be prepared.  In February
2008, the trial court conducted a hearing on punishment.  The trial court
reviewed the PSI report, the State=s punishment memorandum, and several
letters written on behalf of appellant.

In
addition to the two enhancing felonies, both the PSI report and the State=s punishment memorandum detailed
appellant=s significant history of theft-related offenses.  According to these
documents, appellant had previously served sentences in both the United States
Bureau of Prisons and the Texas Department of Corrections.[2] 
Finally, the PSI report stated that appellant had two Aactive warrants: one for Obtaining
Scheduled IV Dangerous Drug by Fraud from 1986 in Shreveport, Louisiana, and
the other for Grand-Theft in Riverside, California in 2006.@








At the
punishment hearing, appellant=s trial counsel stated that, instead of a closing argument,
appellant would make a statement to the court.  The trial judge informed
appellant that if she wanted to make a statement, she would be placed under
oath and subject to cross-examination by the State.  Appellant was then sworn
in and made the following statement:

I would
like to thank the DA and you, Your Honor, for giving me the opportunity to be
investigated for possible probation.

I=ve made some bad choices in my life, and they started
with the loss of my husband, trying to support three children, maintain a home
and my life.

I served
time for that, corrected it, and my mother became very sick.

And then,
instead of thinking things through, I didn=t. 
And since I had - - was granted the right to use the credit card, I did use it
and I did make payments to credit card statements.

I worked
for a month and was not paid.  I=m
not saying that what I did was right or wrong, but I did do it, and I did have
permission.

The credit
card, in fact, was mailed to [the complainant]=s house, and he brought the credit card to me at the office and gave it
to me.  That was for my use.  Then, when I needed to get to Louisiana, I called
and asked him, and he said yes, and I charged on it, which I did pay.  And I
was paying every time I used the credit card for my personal use, I paid the
bill in full until the very end and then I didn=t, but I was making payments, not in full, but making payments.

And that=s what I would like to do if I=m granted probation: to correct my wrong, okay?

Since I=ve been incarcerated, I=ve realized I love my children and my mother the wrong way.  I mean you=re supposed to love them, but I did everything to try
to make up everything for their loss and make them happy.

Now I want
a chance to make [myself] happy and live for [myself] and do the right thing,
not love to the extreme of doing things in the gray, instead of in the black
and white, and I do apologize to the State for anything I=ve done wrong.

The State proceeded to
cross-examine appellant, focusing on the details of the current offense, as
well as highlighting some of her previous offenses.








After
appellant testified, the trial court asked her trial counsel if she would like
to make an argument.  Her counsel replied, AYour Honor, I=ve discussed everything with Ms.
Allen in jail.  She knows the full range of punishment; and, of course, other
than what she said, we have nothing else.@  The State made a very brief closing
argument, noting appellant=s criminal history and her failure to accept responsibility
for what she had done, and asked the trial court to impose Asubstantial punishment.@  Before assessing appellant=s punishment, the trial court stated,


I=ve been really interested to hear what you were going
to say because I thought I would hear some kind of remorse or something, but
what I heard is somebody who is completely disconnected from reality.  You
stole from these people, from their family.  Do you have any idea of the havoc
you=ve created in their business and destroying their
lives?  You=ve been investigated by the PSI people and you stand
up here and portray yourself as a selfish individual.

The trial court then
sentenced appellant to sixty years= confinement in the Texas Department
of Criminal Justice, Institutional Division.  This appeal timely ensued.

II.  Issues Presented

In her first
issue, appellant asserts that she received ineffective assistance of counsel
during her punishment hearing because her counsel failed to call witnesses to
testify on her behalf, make a closing argument, and provide letters of
character reference.  In her second issue, she contends that her sentence of
sixty years= confinement represents cruel and unusual punishment.

III.  Analysis

A.        Ineffective Assistance of
Counsel

Appellant
articulates her first issue as follows:








The court
stated that it had reviewed four letters on behalf [of] the [a]ppellant but
these letters were not attached to [the] pre-sentencing investigation report
nor were they offered into evidence and made a part of the [appellate r]ecord. 
These witnesses were not called to testify for [a]ppellant nor did [a]ppellant=s counsel make a final argument requesting that
[a]ppellant should receive the minimum sentence which would have been
twenty-five years in the Texas Department of Criminal Justice or a sentence
that trial counsel felt was reasonable under the facts.

We
review claims of ineffective assistance of counsel under the standard set forth
in Strickland v. Washington, 466 U.S. 668 (1984).  Under the Strickland
test, an appellant must prove (1) his trial counsel=s representation was deficient, and
(2) the deficient performance was so serious that it deprived the appellant of
a fair trial.  Id. at 687.  To establish both prongs, the appellant must
prove by a preponderance of the evidence that counsel=s representation fell below the
objective standard of prevailing professional norms, and there is a reasonable
probability that, but for counsel=s deficiency, the result of the
proceeding would have been different.  Id. at  690B94.  An appellant=s failure to satisfy one prong makes
it unnecessary for a court to consider the other prong.  Id. at 697. 
This test is applied to claims arising under the Texas Constitution as well as
those arising under the United States Constitution.  Hernandez v. State,
726 S.W.2d 53, 56B57 (Tex. Crim. App. 1986) (en banc).

Our
review of defense counsel=s performance is highly deferential, beginning with the
strong presumption that the attorney=s actions were reasonably
professional and were motivated by sound trial strategy.  Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc).  When the record is
silent as to trial counsel=s strategy, we will not conclude that defense counsel=s assistance was ineffective unless
the challenged conduct was A>so outrageous that no competent
attorney would have engaged in it.=@ Goodspeed v. State, 187
S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting Garcia v. State, 57
S.W.3d 436, 440 (Tex. Crim. App. 2001)).  AA claim of ineffective assistance of
counsel based on counsel=s failure to call witnesses fails in the absence of a showing
that such witnesses were available to testify and that the defendant
would have benefitted from their testimony.@  Wade v. State, 164 S.W.3d
788, 796 (Tex. App.CHouston [14th Dist.] 2005, no pet.).








First,
appellant concedes that the trial court considered four letters written on
appellant=s behalf, although these letters are not a part of our record. 
Therefore, presumably, appellant is asserting that her trial counsel was
ineffective by failing to include these letters in the appellate record.  But
because appellant did not file a motion for new trial alleging ineffective
assistance, we have not been Aprovided the opportunity to make [a] determination on direct
appeal with a record capable of providing a fair evaluation@ of appellant=s allegation.  Thompson v. State,
9 S.W.3d 808, 813B14 (Tex. Crim. App. 1999) (A>Indeed in a case such as this, where
the alleged derelictions primarily are errors of omission . . . rather
than commission revealed in the trial record, collateral attack may be .
. . the vehicle by which a thorough and detailed examination of alleged
ineffectiveness may be developed and spread upon a record.=@) (quoting Jackson v. State,
973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (en banc)).  Further, nothing in our
record establishes that any testimony would have differed from the statements
presented to the trial court in the letters it considered.  See Jagaroo v.
State, 180 S.W.3d 793, 800 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).  Consequently, appellant has not
established that her counsel=s performance was deficient in this regard.








Second,
appellant asserts that the record reflects that there were witnesses who could
have testified on her behalf.  To the contrary, however, the record does not
reflect that there were witnesses who could have so testified; instead, the
record indicates that the trial court reviewed four letters written on her
behalf.  On this record, we can neither discern whether any of these witnesses
were available to testify nor whether their testimony would have benefitted
appellant.  We must therefore presume that counsel, in the exercise of
reasonable professional judgment, made a decision not to call witnesses during
punishment.[3]  Wade,
164 S.W.3d at 796.

Finally,
defense counsel=s decision to waive final argument is generally considered a
matter of trial strategy that will not support a finding of deficient
performance.[4]  See, e.g.,
Ransonette v. State, 550 S.W.2d 36, 41 (Tex. Crim. App. 1976) (concluding
that waiver of final argument, in the punishment phase of trial, was sound
trial strategy); Salinas v. State, 773 S.W.2d 779, 783 (Tex. App.CSan Antonio 1989, pet. ref=d) (explaining A[i]t is the trial strategy of some
attorneys to waive final argument in an attempt to cut off the State=s rebuttal@).  Here, given that appellant had
already pleaded her case for leniency to the trial court through her own
testimony, her trial counsel=s decision to forego further argument on her behalf may have
been a strategic choice.








In sum,
the record in this case is silent as to appellant=s trial strategy. Under these
circumstances, we cannot say the challenged conduct was so outrageous that no
competent attorney would have engaged in it.  See Goodspeed, 187 S.W.3d
at 392.  Thus, appellant has not established that her trial counsel was
ineffective, and we overrule her first issue.

B.        Cruel and Unusual
Punishment

In
appellant=s second issue, she argues that she received Acruel and unusual punishment where
the record reflects that she could have received a sentence of twenty-five
years but received a sentence of sixty years.@  But appellant did not raise this
issue in the trial court.[5]  

To
present a complaint for appellate review, Athe record must show the complaint
was made to the trial court by a timely request, objection, or motion.@  Tex.
R. App. P. 33.1(a).  Appellant neither objected to her sentence, nor
raised this argument in her motion for new trial.  AThe constitutional right to be free
from cruel and unusual punishment may be waived.@    Nicholas v. State, 56
S.W.3d 760, 768 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d) (citing Stewart v. LaGrand,
526 U.S. 115, 119 (1999) and Solis v. State, 945 S.W.2d 300, 301 (Tex.
App.CHouston [1st Dist.] 1997, pet. ref=d)).  Accordingly, appellant has not
preserved this issue for our review, and it is overruled.

IV.  Conclusion

In sum,
we conclude appellant has not established, by a preponderance of the evidence,
that her trial counsel was ineffective.  Further, appellant has not preserved
her complaint that the trial court=s sentence violated her right to be
free from cruel and unusual 

 

 








punishment.  We therefore
overrule her two issues on appeal and affirm the trial court=s judgment. 

 

 

/s/        Eva M. Guzman

Justice

 

Panel consists of Justices Yates,
Guzman, and Sullivan.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  Specifically, appellant pleaded guilty to
appropriating

by
acquiring and otherwise exercising control over property, namely MONEY, owned
by . . . the Complainant[] with the intent to deprive the Complainant of the
property and the total value of the property appropriated was over twenty
thousand dollars and under one hundred thousand dollars.





[2]  Appellant had previously been placed on probation in
Texas, but it had been revoked.  Further, according to the information in the
PSI, one of the conditions of her release from the Bureau of Prisons was that
she pay restitution, but she failed to pay the restitution as ordered.





[3]  Appellant=s
reliance on Milburn v. State is misplaced.  15 S.W.3d 267 (Tex. App.CHouston [14th Dist.] pet. ref=d) (op. on remand).  In Milburn, we concluded
that the appellant=s trial counsel was ineffective by failing to
investigate and interview various possible punishment witnesses, Adespite the availability and willingness of several of
appellant=s relatives, friends, and co-workers to testify on his
behalf.@  Id. at 269.  Milburn is
distinguishable from appellant=s situation in
several respects, however.  First, the appellant in Milburn filed a
motion for new trial alleging ineffective assistance of counsel, Milburn v.
State, 973 S.W.2d 337, 339 (Tex. App.CHouston
[14th Dist.] 1998), vacated and remanded, 3 S.W.3d 918 (Tex. Crim.
App. 1999), whereas here, appellant did not make such allegations in her motion
for new trial.  Second, in Milburn, the parties stipulated that twenty
of the appellant=s friends and relatives were available and would have
testified in his favor, yet were not contacted by the appellant=s defense team.  Milburn, 15 S.W.3d at 269. 
Here, as noted above, there is no such evidence regarding the nature and
availability of any witnesses who could or would have testified on behalf of
appellant.  Third, Milburn=s trial counsel
testified at the motion-for-new-trial hearing and admitted that he had neither
investigated nor evaluated available punishment evidence.  Id. at 270.  In
this case, we have no such admission from appellant=s trial counsel.  Indeed, as the State points out in
its briefing, Athe existence of the letters of reference that the
trial court considered at the [punishment] hearing suggests that counsel had
investigated [a]ppellant=s punishment
case.@





[4]  As noted above, appellant=s trial counsel offered appellant=s testimony in lieu of argument.





[5]  In her brief, appellant states, AAppellant is aware that failure to raise an Eighth
Amendment objection at trial prevents making any such claim on appeal.@