

# NUMBER 13-13-00170-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOSE ANGEL ACOSTA
A/K/A JOE ANGEL ACOSTA,                                      Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

### On appeal from the 28th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Benavides

Appellant Jose Angel Acosta was convicted of aggravated assault with a deadly weapon, specifically, a knife. *See* TEX. PENAL CODE ANN. § 22.02 (West, Westlaw through 2013 3d C.S.). He was sentenced to sixty years' imprisonment in the Texas Department of Criminal Justice—Institutional Division (TDCJ—ID). By four issues,

Acosta contends: (1) there is insufficient evidence to support that he used a knife during the assault; (2) there is insufficient evidence to sustain the enhancement of his offense from a second-degree felony to a habitual offender felony; (3) the trial court erred when it omitted a lesser-included offense jury instruction; and (4) he was denied effective assistance of counsel. We affirm.

## I. BACKGROUND FACTS

On the night of January 18, 2012, David Dee agreed to give Ashley Barrera a ride from her home. Barrera was temporarily staying at an apartment shared by her mom, Teresa Moreno, and Acosta. Acosta and Moreno were in a relationship and living together. That night, however, Acosta and Moreno were arguing so Barrera wanted to leave their apartment. When Dee arrived, Barrera was standing outside with her possessions. Dee stated that he heard "a bunch of yelling and screaming going on." Barrera loaded her things into the bed of Dee's blue Ford Ranger pickup when Moreno came outside and said she wanted to leave, too. Moreno loaded her quickly-packed possessions into the pickup and then got into the truck.

Dee testified that Acosta came outside as Moreno got into the passenger side of the truck. According to Dee, Acosta "punched and kicked" his passenger side door and continued to argue with Moreno. Then, Acosta walked around the front of the truck as Dee attempted to put his truck into gear. Dee's driver side window was down approximately six inches. Acosta punched that window four or five times, then stuck his arm through the window opening. Dee reported seeing "something silver because it was dark." Dee finally got his truck into gear when Barrera told him, "You're bleeding!" Dee said that, at that moment, "blood squirted from under [his] eye and across [his] nose up

2

over [his] head. . . ." The bleeding impaired his vision. He drove to the end of the street and called the police.

Dee testified that, by the time police and EMS arrived ten minutes later, he had already filled a rag with blood from the cut on his face. He required stitches to repair the wound, and now he has a visible scar across his nose. He testified that his treating doctor told him that if the cut had been a "quarter of an inch higher, the eyeball would have rolled out of [its] socket."

Dee testified that he received a letter from Acosta after the incident, wherein Acosta apologized and explained that he "blacked out" during his attack. Dee characterized the letter as follows: "it looks like he was saying he was sorry and then the rest of it is about having pity on [him]." In this letter, Acosta urged Dee to drop the charges or, in the alternative, "ask for the minimum of five years and ask the DA to drop the enhancement back to a second degree felony which is two to twenty." Acosta sent another letter to Dee and also had a church elder call Dee to encourage him to forgive and be lenient on Acosta.

Moreno testified that Acosta was her ex-boyfriend. She stated that she and Acosta were fighting in their apartment the night of the incident. Moreno's daughter Barrera was staying with them for a few days and witnessed the fight. Moreno testified that when Barrera saw Acosta hit her mother, Barrera said, "Mom, you're not staying here, you're going to go with me." The women ran outside to where Dee was waiting in his blue pickup truck. She stated that Acosta followed them, and that Acosta hit her one more time outside. Moreno then got into the truck. She testified that the following happened next:

3

[Acosta] went around and all I saw was his hand in and out of the window because [Dee] had the window open so much. I just saw the hand go in and out and that was it. As we were leaving—we were barely going to leave when my daughter was like, "David!" And I looked, by the time I turned around there's blood all over the windshield. We made the corner and we called 911.

Moreno testified that she had known Acosta for a couple of years and that he "would always carry [a knife] for work." She described the knife as "a little blade, pocket knife" that was black and silver.

Acosta testified on his own behalf. He stated that he takes medication for schizophrenia, Hepatitis C, and blood cancer. Acosta also stated that he was recently in a car accident and needs to have surgery on his intestines. He testified that he blacked out the evening of the incident and doesn't remember most of that night. Acosta testified that he wrote letters to Dee apologizing for what happened to Dee, but never admitted any wrongdoing because he does not remember doing anything wrong. Acosta also testified that, by the night of the accident, he no longer carried a pocket knife.

The jury found Acosta guilty of aggravated assault with a deadly weapon, which was enhanced from a second-degree felony to a habitual felony offender offense after he pleaded true to two enhancement felonies. *See id.* § 12.33 (West, Westlaw through 2013 3d C.S.) (outlining the punishment range for a second-degree felony); *id.* § 12.42(d) (West, Westlaw through 2013 3d C.S.) (explaining that a second-degree felony can be enhanced to a habitual felony offense if the defendant has two prior felony convictions, where the range of punishment is twenty-five to ninety-nine years in prison, or life). Acosta was sentenced to sixty years' imprisonment in the TDCJ—ID. Acosta appealed.

4

## II. SUFFICIENCY OF THE EVIDENCE

### A. Applicable Law

In reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). In viewing the evidence in the light most favorable to the verdict, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. It is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if the finding of guilty is warranted by the cumulative force of all incriminating evidence. *Winfrey*, 393 S.W.3d at 768 (citations omitted).

The elements of the offense are measured as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Here, a person commits aggravated assault with a deadly weapon when the person causes serious bodily injury to another while using or exhibiting a deadly weapon

5

during the commission of the assault. *See* TEX. PENAL CODE ANN. § 22.02. A deadly weapon other than a firearm is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *See id.* § 1.07(a)(17) (West, Westlaw through 2013 3d C.S.).

## B. Discussion

### 1. Evidence Regarding Acosta's Conviction

By his first issue, Acosta argues that the evidence was insufficient to sustain his conviction of aggravated assault because the State did not prove that he injured Dee with a knife. Acosta was indicted as follows:

> That Jose Angel Acosta aka Joe Angel Acosta, defendant, on or about January 18, 2012, in Nueces County, Texas, did then and there intentionally, knowingly, or recklessly cause bodily injury to David Dee by cutting the said David Dee with a knife on the face . . . .

Acosta points out that Dee never testified that it was a knife that actually cut him. Instead, Dee testified that Acosta stuck his arm through the driver's side window opening and that Dee saw "something silver because it was dark." Similarly, Moreno did not actually recall seeing a knife the night of the incident. She saw Acosta's hand go "in and out and that was it." However, she testified that she had known Acosta for several years and knew he "would always carry [a knife] for work." She described the knife as "a little blade, pocket knife" that was black and silver. In contrast, Acosta testified at trial that he no longer carried a knife with him anymore. Acosta argued that the injury could have been caused using another bladed object, such as a boxcutter.

In a sufficiency review, we consider all of the evidence in the light most favorable to the verdict. *See Winfrey*, 393 S.W.3d at 768. We also defer to the jury's credibility

6

and weight determinations on evidence because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. Here, it appears that the jury believed the testimonial evidence Dee and Moreno provided about the knife and disbelieved Acosta. Both Dee and Moreno recalled seeing Acosta's hand slip in through the lowered driver's side window. Moreno testified that, in the years she knew Acosta, he always carried a black and silver pocket knife with him. It is undisputed that Dee was cut by something sharp because his doctors informed him that if his injury had been a "quarter of an inch higher, the eyeball would have rolled out of [his] socket." And Detective Albert Almendarez, a detective with the Corpus Christi Police Department who responded to Dee's 911 call, testified at trial that based on the amount of blood he saw that night and the stitches required on Dee's face, that it "appear[ed] that a knife was used in this case." In light of the foregoing, we hold that a rational fact finder could have found beyond a reasonable doubt that Acosta injured Dee with a knife. *See Winfrey*, 393 S.W.3d at 768.

### 2. Evidence Regarding Acosta's Enhancement

During the punishment phase, the State adduced evidence of two prior felony convictions to enhance Acosta's aggravated assault offense from a second-degree felony to a habitual felony offender offense: Acosta's conviction for burglary of a building in September 1991 and his conviction for retaliation in November 2006. *See* TEX. PENAL CODE ANN. §§ 30.02, 36.06 (West, Westlaw through 2013 3d C.S.). These enhancements raised his punishment range from two to twenty years' incarceration, *see id.* § 12.33, to twenty-five to ninety-nine years' incarceration or a life sentence. *See id.* § 12.42(d).

7

By his second issue, Acosta contends that the evidence was insufficient to sustain his enhancements because the trial court did not take Acosta's plea of "true" or "untrue" to the enhancement offense at the appropriate time. Texas Code of Criminal Procedure article 36.01(a)(1) provides that when prior convictions are alleged in an indictment for the purposes of enhancement, that portion of the indictment shall not be read until the hearing on punishment is held. *See* TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(1) (West, Westlaw through 2013 3d C.S.). The enhancements should be read prior to hearing punishment evidence. *Id.*

> The correct procedure to be followed is set out in *Trammell v. State,* 445 S.W.2d 190 (Tex. Crim. App. 1969). In *Trammell v. State, supra*, at the penalty stage of the trial the State introduced evidence of the accused's prior convictions without first reading the enhancing portions of the indictment to the jury. When the error was discovered[,] the State was allowed to reopen and read the indictment to the jury. The accused objected that the State had waived the enhancement portions of the indictment. At this point[,] the State proposed to re-introduce the testimony previously offered. The accused with his counsel agreed and stipulated before the jury, in lieu of re-producing the testimony, that the evidence previously offered would be the same and could be considered by the jury. The accused and his counsel having stipulated to the evidence before the jury, this Court held the evidence was properly before the jury.

*See Welch v. State*, 645 S.W.2d 284, 285 (Tex. Crim. App. 1984).

Here, similarly, the court heard the punishment evidence and then realized it had not read the enhancement paragraphs to the jury. Acosta complains on appeal that: (1) the trial court improperly took Acosta's plea after all punishment evidence had been heard; (2) the trial court did not require the state to re-prove the testimony of its officers after entry of the plea; (3) there were no stipulations on the record by the parties as to the judgments; (4) the jury heard testimony about a 2011 DWI conviction, which was a class B misdemeanor and not a felony; (5) the 1991 judgment for burglary, which was admitted

8

into evidence, did not have Acosta's photo or fingerprints; and (6) no fingerprint expert was produced to verify that it was indeed Acosta who allegedly committed all of these crimes.

Assuming without deciding that it was error for the trial court to read the enhancements after the close of punishment evidence, we find that it was harmless error because Acosta subsequently pleaded "true" to the enhancements. These pleas alone would be enough evidence to sustain the enhancements. "Pleas to enhancement allegations are different from pleas to the guilt-innocence phase of trial because a plea of 'true' *does* constitute evidence and sufficient proof to support the enhancement allegation." *Wilson v. State*, 671 S.W.2d 524, 526 (Tex. Crim. App. 1984). Further, we note that for all of Acosta's complaints on appeal, we found no objections in the record. "As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion." TEX. R. APP. P. 33.1(a). And the Court of Criminal Appeals has held that any violation of article 36.01, as alleged by Acosta here, must be preserved by an objection. *See Marshall v. State*, 185 S.W.3d 899, 903 (Tex. Crim. App. 2006).

For these reasons, we overrule Acosta's second issue.

### III. JURY INSTRUCTION

By his third issue, Acosta complains that the trial court erred when it did not submit a lesser-included offense of deadly conduct. A person commits deadly conduct if he "recklessly engages in conduct that places another in imminent danger of serious bodily injury." TEX. PENAL CODE ANN. § 22.05 (West, Westlaw through 2013 3d C.S.). "A person acts recklessly, or is reckless, with respect to circumstances surrounding his

9

conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c) (West, Westlaw through 2013 3d C.S.). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

"A charge on a lesser included offense is required where (1) the lesser-included offense is included within the proof necessary to establish the charged offense, and (2) there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser included offense." *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993). However, "the trial court is not required to include a lesser-included offense in the charge if the evidence only raised the issue that the accused is guilty of the greater offense, or not guilty at all." *Tave v. State*, 899 S.W.2d 1, 4 (Tex. App.—Tyler 1994, pet. ref'd) (citing *Rogers v. State,* 687 S.W.2d 337, 344 (Tex. Crim. App. 1985)).

The evidence does not demonstrate that Acosta acted recklessly, such that the lesser-included charge of deadly conduct was warranted. Acosta himself claims that he blacked out most of the evening and does not remember if he assaulted Dee. This is insufficient evidence to justify the deadly conduct instruction. *See Schroeder v. State*, 123 S.W.3d 398, 401 (Tex. Crim. App. 2003) ("Evidence of a defendant's inability to remember causing the death of the victim [did] not entitle the defendant to a charge on the lesser-included offense of manslaughter, and the trial court did not err by not submitting such a charge to the jury"). "Blacking out" does not demonstrate that Acosta

was "aware of" but consciously disregarded a substantial and unjustifiable risk to Dee. *See* TEX. PEN. CODE ANN. § 6.03(c). On the other hand, testimony from the State's witnesses revealed that Acosta's actions showed intent. Dee testified that Acosta was arguing with Moreno as she attempted to get into Dee's truck, "punched and kicked" Dee's passenger door, punched Dee's driver's side window, and then stuck his arm in through Dee's partially-open driver's side window to injure him. Moreno testified that she and Acosta were fighting and that he hit her before she got into Dee's truck. She also stated that she saw Acosta's hand go "in and out of the window."

Because there was no evidence from which a rational juror could find that Acosta is guilty "only of the lesser included offense," *Rousseau,* 855 S.W.2d at 672–73, we overrule this issue.[1]

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

By his final issue, Acosta argues that his trial counsel erred during voir dire, the cross-examination of Moreno, and the punishment phase. We analyze each issue in turn.

### A. Applicable Law

We apply the two-pronged *Strickland* analysis to determine whether counsel's representation was so deficient that it violated a defendant's constitutional right to effective assistance of counsel. *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Jaynes v. State,* 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.); *see Strickland v. Washington,* 466 U.S. 668, 684 (1984). An appellant claiming a

---

[1] We also note that Acosta's trial counsel stated on the record that he felt the deadly conduct instruction was not warranted by the evidence and that he only requested it at his client's insistence.

*Strickland* violation must establish that: (1) "his attorney's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different." *Jaynes,* 216 S.W.3d at 851; *see Strickland*, 466 U.S. at 687.

We afford great deference to trial counsel's ability—"an appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Jaynes,* 216 S.W.3d at 851. The appellant must prove both elements of the *Strickland* test by a preponderance of the evidence. *Munoz v. State,* 24 S.W.3d 427, 434 (Tex. App.-—Corpus Christi 2000, no pet.). "A *Strickland* claim must be 'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Goodspeed*, 187 S.W.3d at 392.

## B. Discussion

### 1. Voir Dire

Acosta first argues that his trial attorney was deficient by failing to ask bias questions of those venire persons who had been affected by assault and aggravated assault. However, the record shows that the prosecutor asked the jurors this question. Specifically, the prosecutor asked, "Is there anyone one of you [sic] who you yourself or a member of your family or a close personal friend who has ever been a victim of assault or any assault?" Fourteen venire persons raised their hands. Then, the prosecution asked this small group if there was anyone who could not be a fair and impartial juror in this case because of their previous experiences with assault. No hands were raised. Because the State addressed this topic in voir dire, Acosta's counsel was entitled to rely on this information and did not need to "traverse those territories to be effective." *See*

*White v. State,* 999 S.W.2d 895, 898 (Tex. App.—Amarillo 1999, pet. ref'd). We cannot conclude counsel performed deficiently in this regard.

Acosta also asserts that venire person eleven should have been struck when she said she could not be fair and impartial. We also find this point without merit, though, because a review of the record shows that although venire person eleven admitted that she might know a relative of Dee's, she stated that she could still be fair and impartial at trial.

### 2. Cross-Examination of Teresa Moreno

Acosta next contends that his trial attorney was deficient when he failed to impeach Moreno with questions regarding her prior criminal convictions and drug use. The record, however, is silent as to why Acosta's attorney did not cross-examine her on these issues. Moreno testified that her relationship with Acosta was violent. She testified that the night of the incident, Acosta struck her at least twice. She also stated at trial that she was nervous about testifying because it was the first time she had seen Acosta since that evening. We conclude that it is reasonable trial strategy for a defense attorney to choose not to strongly cross-examine a woman who had been in a violent relationship with the defendant in front of a jury.[2] Because there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, we cannot say that the failure to question Moreno about her past criminal history or drug use constituted deficient performance. *See Jaynes,* 216 S.W.3d at 851. Further, Acosta

---

[2] We point out, however, that a review of the record shows that Acosta's attorney cross-examined Moreno on the fact that she had been drinking the night Dee was injured.

13

has failed to show how this line of cross-examination would have made a difference in the outcome of his case. *See id.*

### 3. Failure to Call Mitigating Witnesses During Punishment

Finally, Acosta posits that his trial attorney should have called a mitigating witness during the punishment phase. However, "[i]t is the trial counsel's prerogative, as a matter of trial strategy, to decide which witnesses to call." *Weisinger v. State,* 775 S.W.2d 424, 427 (Tex. App.—Houston [14th Dist.] 1989, pet. ref d). "An attorney's decision not to present particular witnesses at the punishment stage may be a strategically sound decision if the attorney bases it on a determination that the testimony of the witnesses may be harmful, rather than helpful, to the defendant." *Milburn v. State,* 973 S.W.2d 337, 344 (Tex. App.—Houston [14th Dist.] 1998), *vacated on other grounds,* 3 S.W.3d 918 (Tex. Crim. App. 1999).

Again, the record is silent on why Acosta's attorney did not present mitigating witnesses. We note, though, that during a hearing outside the presence of the jury on another matter, Acosta's attorney had advised Acosta that "if we do that and the jury seems to think that you're trying to down play whatever happened may have happened, it would only aggravate them and make them madder at you." Because this line of thinking appears to be a reasonable trial strategy, we conclude that Acosta did not "overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance" in failing to call mitigating witnesses. *See Jaynes,* 216 S.W.3d at 851. And again, Acosta failed to establish how calling certain witnesses would have changed the outcome of this case. *See id.*

14

We overrule Acosta's fourth issue.

## V. Conclusion

Having overruled all of Acosta's issues, we affirm the judgment of the trial court.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
Tex. R. App. P. 47.2 (b).

Delivered and filed the
4th day of September, 2014.